**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| ROGER ELLENBURG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case Number: 5:16-cv-00360-JHE |

## MEMORANDUM OPINION[1]

Plaintiff Roger Ellenburg ("Ellenburg") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Ellenburg timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

### I. Factual and Procedural History

Ellenburg filed his application for a period of disability and DIB on February 1, 2013, alleging (amended) he became unable to work beginning February 20, 2012. (Tr. 118-24, 148). Ellenburg was fifty-four-years-old on December 31, 2016, his date last insured ("DLI"). (Tr. 14, 118). Ellenburg has at least a high school education and is able to communicate in English. (Tr.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 8).

18). Ellenburg has past relevant work as a repairman, chemical inspector, derust washer, and analyst. (Tr. 18). The Agency initially denied Ellenburg's application, and Ellenburg requested a hearing where he appeared on May 1, 2014. (Tr. 80). After the hearing, the Administrative Law Judge ("ALJ") denied Ellenburg's claim on June 19, 2014. (Tr. 9-23). Ellenburg sought review by the Appeals Council, but it declined his request on January 5, 2016. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. On February 29, 2016, Ellenburg initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Ellenburg last met the insured status requirements of the Social Security Act on December 31, 2016 (his date last insured or "DLI"), and that Ellenburg had not engage in substantial gainful activity from his (amended) alleged onset date of February 20, 2012 through his DLI. (Tr. 14). At Step Two, the ALJ found Ellenburg has the following severe impairments: recurrent hernia, bone spurs in the bilateral knees, degenerative disc disease, and obesity. (*Id.*). At Step Three, the ALJ found Ellenburg did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to Step Four, the ALJ determined Ellenburg's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Ellenburg had the RFC to perform light work as defined

4

in 20 C.F.R. 404.1567(b), except Ellenburg could frequently crawl, crouch, kneel, and climb ramps or stairs, but never climb ladders, ropes, or scaffolds; Ellenburg should avoid all exposure to hazards such as dangerous machinery and unprotected heights. (Tr. 15-17).

At Step Four, the ALJ determined, through the date last insured, Ellenburg is unable to perform any past relevant work. (Tr. 18). At Step Five, the ALJ determined, based on Ellenburg's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Ellenburg could perform. (Tr. 18). Therefore, the ALJ determined Ellenburg has not been under a disability and denied his claim. (Tr. 19).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ellenburg contends the Commissioner erred as a matter of law in determining that he is not entitled to benefits and issued a decision that was not based on substantial evidence and is inconsistent with applicable law. (Doc. 12). Specifically, Ellenburg argues the ALJ failed to properly evaluate the "credibility" of Ellenburg's complaints of pain consistent with the Eleventh Circuit pain standard. (*Id.* at 3-9).

### A. Application of the Eleventh Circuit Pain Standard

Ellenburg alleges disability as of February 2012, due to the presence of chronic moderately

5

severe back and abdominal pain. (Tr. 29-30). Ellenburg testified he is in constant pain in his side and back. (*Id.*). Ellenburg contends he can sit and stand for thirty to forty minutes at one time, walk for about 100 feet at one time, and lift less than ten pounds. (Tr. 30-32). He further testified he lies down about an hour or two daily and spends most of his day sitting. (Tr. 31, 34). Ellenburg contends the ALJ mischaracterized the evidence upon which she relied to find Ellenburg not disabled and failed to properly consider his longitudinal medical treatment. (Doc. 12 at 5).

When a claimant attempts to establish disability based on subjective complaints, including pain, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p,[4] 1996-374186. If the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his work must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ

---

[4] SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p, which was in effect when the ALJ issued his decision. SSR 16-3p eliminates the use of the term "credibility" and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016). There is no indication that this clarification requires remand. Because the effective date of SSR 16-3p came *after* the ALJ's decision, the court reviews the case under SSR 96-7p. However, an evaluation of the ALJ's decision with the clarification in mind does not require remand. The ALJ did not make any statements to indicate he assessed the credibility of plaintiff's character, but rather assessed the statements she made in light of the objective medical evidence.

may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Citing to the appropriate standard and relevant legal authority, (tr. 15-17.), the ALJ found Ellenburg's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she determined Ellenburg's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible, (*id.* at 16).

As to Ellenburg's abdominal pain, the ALJ noted each of Ellenburg's four hernia surgeries and concluded that the fourth surgery was "successful," that Ellenburg "merely complained of resulting mild incisional pain, which was resolved by January 27, 2014," and that "[t]here is no subsequent treatment for the condition in the record." (Tr. 16). On June 17, 2010, Ellenburg underwent a laparoscopic repair of an epigastric midline hernia. However, his hernia recurred and an incisional hernia in the left lower quadrant of the abdomen formed. On April 26, 2011, laparoscopic assisted hernia repairs using mesh were performed. After the surgery, Ellenburg developed a recurrent incisional hernia in the left lower quadrant of the abdomen requiring repair on November 15, 2011. An upper midline ventral hernia above the umbilicus subsequently

7

formed, causing chronic abdominal pain with nausea and vomiting. On December 3, 2013, Ellenburg underwent an open repair of the midline ventral hernia using composite mesh.

Ellenburg contends the ALJ mischaracterized this evidence by finding his treatment for recurring hernias was "effective." (Doc. 12 at 5). Ellenburg underwent four hernia surgeries from 2010-2013. (Tr. 202, 224, 336, 360). After the third hernia surgery, a physical exam performed in October 2012, revealed the presence of a recurrent ventral hernia. (Tr. 234). He continued to report abdominal pain in February 2013, but Dr. Randolph Buckner was unwilling to do another hernia surgery until Ellenburg's pain from the previous surgery was better. (Tr. 230). During the February 8, 2013 appointment, Ellenburg reported that the Mobic was not helping with the pain. (*Id.*). On April 16, 2013, Dr. Buckner noted Ellenburg had chronic left lower quadrant abdominal pain and indicated that he believed the hernia needed to be repaired. (Tr. 270). Ellenburg underwent his fourth hernia surgery on December 3, 2013. (Tr. 297). After reporting incisional pain at his December 17, 2013 post-operative appointment, on January 27, 2014, Ellenburg reported the incisional pain was "mild and resolved," as the ALJ notes. (Tr. 294-95). However, absent from the ALJ's opinion is Dr. Buckner's January 27, 2014 note: "[s]till with LLQ [lower left quadrant] abdominal pain, muscular." (Tr. 294). The ALJ also failed to note that on March 19, 2014, at a visit with Dr. Walker, Ellenburg reported residual pain in his left side and that he was not getting a lot of relief from his medication. (Tr. 367).

The ALJ's conclusion that "after the final hernia surgery, [Ellenburg] only complained of mild incisional pain," (tr. 17), is not supported by substantial evidence. There is record evidence showing that Ellenburg complained to two different doctors that he continued to have abdominal pain, specifically in the left lower quadrant, after his fourth hernia surgery and that he did not get a lot of relief from his medication. (Tr. 294, 367). The ALJ's inference that Ellenburg's symptoms

must not have been as limited as he alleged since he continued to smoke despite doctor's telling him he needed to quit to reduce the risk of recurrent hernias, does not cure this deficiency. (Tr. 17). On remand, the ALJ needs to consider this evidence of continued LLQ abdominal pain after the fourth hernia surgery.

As to his complaints of back pain, Ellenburg contends the ALJ mischaracterized the evidence to support a negative credibility finding. (Doc. 12 at 6). The ALJ relies on a July 26, 2013 MRI of Ellenburg's lumbar spine, which shows the following;

- a broad-based disc bulge with bilateral ligamentum flavum and facet joint hypertropy causing mild canal narrowing and mild to moderate bilateral foraminal narrowing at L1-2;
- a broad-based disc bulge with bilateral ligamentum flavum and facet joint hypertropy causing mild to moderate canal narrowing and moderate bilateral foraminal narrowing at L2-3;
- a broad-based disc bulge with bilateral ligamentum flavum and facet joint hypertropy causing mild canal narrowing and moderate to severe bilateral foraminal narrowing at L3-4;
- a broad-based disc bulge with bilateral ligamentum flavum and facet joint hypertropy causing mild to moderate canal narrowing and severe bilateral foraminal narrowing at L4-5; and
- a broad-based disc bulge and bilateral facet joint degenerative changes causing no canal narrowing and mild bilateral foraminal narrowing at L5-S1.

(Tr. 16-17). The ALJ noted that Ellenburg received two epidural steroid injections and was prescribed Tramadol, tizanidine and Relafaen. (Tr. 17). She described the treatment as "effective," and further noted that Ellenburg reported he was better and "did not even schedule his third steroid injection." (*Id.*).

The ALJ also recognized that, at the Agency's request, Will R. Crouch, M.D., examined Ellenburg on April 11, 2013. (Tr. 17). According to the ALJ, Dr. Crouch's examination revealed that there was tenderness over Ellenburg's lower back area with tenderness in the sacroiliac joints bilaterally; his lumbar spine had flexion to seventy-five degrees, extension to ten degrees, right lateral flexion to twenty degrees, left lateral flexion to twenty degrees, right lateral rotation to

twenty-five degrees, and left lateral rotation to twenty degrees; his right knee had one hundred and twenty degrees flexion while the left knee had one hundred and thirty degrees flexion; and that Ellenburg could heel and toe walk and get on and off the examination table without difficulty. (Tr. 17, 267-69). She noted that Dr. Crouch diagnosed Ellenburg with ventral hernia status post multiple repairs, chronic low back pain consistent with degenerative disc disease, and chronic bilateral knee pain consistent with degenerative joint disease, but also noted Dr. Couch did not articulate any limitations caused by these impairments. (*Id.*). The ALJ characterized Ellenburg's treatment for his back pain as "essentially routine and/or conservative in nature," noting his physician never recommended physical therapy or surgery and characterizing the treatment as "generally successful in controlling [Ellenburg's] symptoms." (Tr. 17).

Ellenburg points to appointments on February 8, 2013, June 10, 2013, and July 25, 2014, where he complained about back and other pain. (Tr. 230, 324, 307). Notably, these appointments were before his fourth hernia surgery and prior to receiving two epidural steroid injections for back pain relief. (Doc. 305). After the epidural injections, Ellenburg reported his pain was "a little bit better," and that he was going to wait and keep a third injection "on reserve." (*Id.*). Ellenburg takes issue with the ALJ noting that none of the treating or examining physicians indicated Ellenburg retained disabling limitations or limitations beyond those the ALJ assessed, arguing the inference that a lack of comment on such limitations means there are no limitations is improper under *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1998). (Doc. 12 at 7-8). Ellenburg's reliance on *Lamb* is misplaced. The portion of *Lamb* Ellenburg cites states as follows:

> Dr. Kane opined in June of 1984 that appellant's condition and the restriction of activity necessitated by the condition was not compatible with his former employment. It is true that Dr. Kane did not restrict appellant from light work. It is equally true that he did not recommend light work. In fact, Dr. Kane did not address the issue of any type of work but appellant's former work. Such silence is equally susceptible to either inference, therefore, no inference should be taken.

*Lamb*, 847 F.2d at 703.  Here, the ALJ is not saying that because there are no articulated limitations from a physician that no limitations exist.  Instead, without articulated limitations assessed, there is no evidence of such limitations.  An ALJ cannot assess limitations when there is no medical evidence or opinion to base such limitations on.  There is simply no record evidence that Ellenburg suffered from back pain inconsistent with the RFC after he received the steroid epidural injections in mid-2013.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Ellenburg's claim for a period of disability and disability insurance benefits is **REVERSED** and the action is **REMANDED** to reevaluate Ellenburg's abdominal pain as set out above.

DONE this 12th day of September, 2017.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE